IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Roberto Silva (#99318), | ) |
|           Plaintiff, | ) ) Case No. 20 C 50007 |
| v. | ) ) Hon. Iain D. Johnston |
| Sheriff Read, et al. | ) |
|           Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

In this *pro se* civil rights lawsuit brought pursuant to 42 U.S.C. § 1983, Plaintiff Roberto Silva alleges DeKalb County Jail Deputy James Read failed to protect him from an attack by another inmate. Before the Court is Defendants' motion for summary judgment, to which Plaintiff has responded. For the reasons stated below, Defendants' motion is granted.

### I. Summary Judgement Standard

Pursuant to Federal Rule of Civil Procedure 56(a), a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986), or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material facts exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

1

*Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). A fact is material if it might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 508 (7th Cir. 1992).

The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the party moving for summary judgment demonstrates the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carrol v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The non-movant must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Hannemann v. Southern Door Cty Sch. Dist.*, 673 F.3d 746, 751 (7th Cir. 2012). "Thus, 'summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."' *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992) (quoting *Celotex*, 477 U.S. at 322 (1986)). When evaluating motions for summary judgment, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party, however, "those facts must be supported by sufficient record evidence." *Zylstra v. DRV, LLC*, 8 F.4th 597, 601 (7th Cir. 2021).

## II. Northern District of Illinois Local Rule 56.1

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this Court. The Court explained the rule in detail during the pre-filing conference. (Dkt. 77.) The Court further instructed Plaintiff regarding the local rule's requirements in a subsequent order. (Dkt. 87.) The rule is intended "to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time

combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted.) Local Rule 56.1(a) requires the moving party to provide "a statement of material facts" as to which the moving party contends there is no genuine issue for trial. LR 56.1(a); FED. R. CIV. P. 56(1).

The opposing party must then "file a response to each numbered paragraph in the moving party's statement" of fact. *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005) (internal quotation marks omitted); LR 56.1(b), (e). In the case of any disagreement, the opposing party must reference "specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact." LR 56.1(e)(3). "[M]ere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003). "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." *Id*. The nonmoving party may also present a separate statement of additional facts that require the denial of summary judgment that consists of "concise numbered paragraphs" "supported by citation to the specific evidentiary material, including the specific page number, that supports it." LR 56.1(b)(3), (d).

In this case, Defendants filed a LR 56.1 statement of material facts and memorandum of law with their motion for summary judgment. (Dkts. 81, 80.) Consistent with the local rules, Defendants also provided Plaintiff with a LR 56.2 Notice, which explains what LR 56.1 requires of a litigant opposing summary judgment. (Dkt. 82.)

For his part, Plaintiff submitted a response to Defendants' LR 56.1 statement of facts along with exhibits in support of his response. (Dkts. 88, 88-2.) Plaintiff also submitted a document titled

3

a memorandum of law, which included a section detailing additional facts Plaintiff contends are relevant to this case. (*See* Dkt. 86.) The Court instructed Defendants to consider this fact section and accompanying exhibits as Plaintiff's LR 56.1(b)(3) statement of additional facts (Dkt. 87.)

Defendants argue Plaintiff's responses to their LR 56.1 statement of facts and his statement of additional facts should be disregarded because Plaintiff failed to comply with LR 56.1's requirements. (Dkt. 90, pgs. 1-5.) The Court agrees. Even generously construed, Plaintiff's submissions cannot be deemed an appropriate response to Defendants' statements of material facts.

Although courts construe *pro se* pleadings liberally, *see Thomas v. Williams*, 822 F.3d 378, 385 (7th Cir. 2016), a plaintiff's *pro se* status does not excuse him from complying with federal and local procedural rules. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Collins v. Illinois*, 554 F.3d 693, 697 (7th Cir. 2009) ("[E]ven *pro se* litigants must follow procedural rules."). Local Rule 56.1 "provides the only acceptable means of disputing the other party's facts and of presenting additional facts to the district court." *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995); *see also Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809-10 (7th Cir. 2005).

Here, nearly every response to Defendants' LR 56.1 statements of fact is defective. Almost all Plaintiff's responses contain lengthy, argumentative digressions about additional nonresponsive facts. These defects appear even in responses where Plaintiff admits the fact in question. Many of Plaintiff's responses are also unsupported by his citation to the record or fail to identify the specific portion of the exhibit supporting his dispute with Defendants' fact. For example, Plaintiff at times cites to more than ten, and sometimes twenty, pages of his deposition when disputing several of

4

Defendants' statements of fact. (*See, e.g.,* Dkt. 88, ¶¶ 4, 6, 7.)

It is not the Court's responsibility to search through evidence to support a party's argument, *Bunn v. FDIC*, 908 F.3d 290, 297 (7th Cir. 2018) (citations and quotation marks omitted) ("As has become axiomatic in our Circuit, Judges are not like pigs, hunting for truffles buried in the record"), and a court need not consider argumentative responses and diatribes in a response to an LR 56.1 statement of facts. *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 644 (7th Cir. 2008). Moreover, LR 56.1 specifically instructs that a "response may not set forth any new facts, meaning facts that are not fairly responsive to the asserted fact to which the response is made." LR 56.1(e)(2).

Accordingly, Plaintiff's responses fail entirely to satisfy the requirements of LR 56.1. Therefore, because Plaintiff did not properly respond to Defendants' LR 56.1 statement of facts, the Court accepts Defendants' "uncontroverted version of the facts to the extent that it is supported by evidence in the record." *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012); *Hinterberger v. City of Indianapolis*, 966 F.3d 523, 529 (7th Cir. 2020) (Where a LR 56.1 response is "so full of argument, evasion, and improper denials that it defeat[s] the whole point of [the summary judgment rule]—to identify just what facts are actually in dispute . . . [s]triking the entire statement (rather than only the offending material) [is] not too harsh because requiring the district court to sift through improper denials and legal argument in search of a genuinely disputed fact would defeat the purpose of the rule."); *see also Midwest Imports, Ltd.*, 71 F.3d at 1317.

Next, as Defendants' point out, most of Plaintiff's statements of additional fact are similarly problematic. Many of the statements are unaccompanied by any citation to the record at

5

all, or, where Plaintiff has provided a citation, are unsupported by the cited material.[1] Plaintiff also devotes a significant number of his statements of fact to impermissible legal argument, unsupported speculation about Defendant Read's motives, and disputes about discovery matters. Again, LR 56.1 requires "each asserted fact" to be "supported by citation to the specific evidentiary material, including the specific page number, that supports it. The court may disregard any asserted fact that is not supported with such a citation." LR 56.1(d)(2). The rule also explains that statements of fact "should not contain legal argument." LR 56.1(d)(4). Plaintiff's statement of additional facts clearly runs afoul of these rules. Therefore, the Court has considered Plaintiff's statements of additional facts only to the extent they are supported by the record or where Plaintiff could properly testify about the matters asserted. *See Sistrunk v. Khan*, 931 F. Supp. 2d 849, 854 (N.D. Ill. 2013); *see also* FED. R. EVID. 602.

With these guidelines in mind, the Court turns to the facts of this case, stating those facts as favorably to Plaintiffs as the record and LR 56.1 permit. *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012).

### III. Relevant Facts

Except where noted, the following facts are undisputed. During the relevant time period—January 6 and 7, 2019—Plaintiff was a pretrial detainee at the DeKalb County Jail and Defendant Deputy James Read was a correctional officer at the jail. (Dkt. 81, Defendants' Statement of Material Facts ("DSOF"), ¶¶ 1, 2.) At that time, Plaintiff was housed in cellblock N. (*Id.*, ¶ 3.)

---

[1] Plaintiff compounds these problems by confusingly labeling his exhibits. (*See* Dkt. 86-2.) Plaintiff generally refers to his exhibits by the bates stamp number that appears on the pages, however, the pages are not in sequential order and are mixed in with exhibits to which Plaintiff has assigned an entirely different numbering system. The Court has reviewed all the exhibits Plaintiff submitted and has done its best, largely successfully, to locate the exhibits identified in the response and statement of additional facts.

In early January 2019, detainee Brandon Mills was moved into cellblock N. (Dkt. 81-1, Plaintiff's Deposition ("Pl. Dep."), pg. 33:1-6.) On January 6, 2019, Plaintiff observed Mills pacing in the dayroom of cellblock N, kicking a window, yelling at officers, and turning the shower on and off repeatedly. (Pl. Dep., pgs. 45:24, 46:1-9; DSOF, ¶ 8.) Mills, however, had not made any threats against Plaintiff or any other inmate. (DSOF, ¶ 7.)

Around 6:00 p.m., Plaintiff pounded on the glass window between the dayroom and the control room, where Officer Read was located. (DSOF, ¶ 6; Dkt. 86, Plaintiff's Statement of Facts ("PSOF"), ¶ 3.) Read entered the dayroom. (DSOF, ¶ 8.) Plaintiff described Mills' behavior to Read and stated that he did not feel comfortable being around Mills because of the way he was acting. (*Id.*) Read told Plaintiff he would talk to Mills. (DSOF, ¶ 13; Pl. Dep., pg. 52:14-24.)

Read asked Mills what was wrong and offered to relocate Mills to a different cellblock. (DSOF, ¶ 14, 18; PSOF, ¶ 5.) Mills did not respond, except to state that he would fight Plaintiff if Plaintiff wanted to fight. (*Id.*, ¶¶ 14, 15.) At his September 11, 2020 deposition, Plaintiff testified that he did not know why Mills made this statement because there had been no prior conflict between Plaintiff and Mills. (*Id.*, ¶ 16.)

The parties disagree as to what was said next. Plaintiff testified that Read and Mills did not discuss any other matters. (Pl. Dep., pgs. 58:20-22, 60:3-11.) Read, however, testified that Mills stated he was on edge because his medications were not right, he was waiting for Elgin Mental Health personnel to pick him up, and the shower was too cold. (DSOF, ¶ 20.) According to Read, he discussed these issues with Mills and asked Mills to stop pacing, take a shower, and return to his cell, which Mills agreed to do. (*Id.*, ¶ 21, 22.)

After Read finished speaking to Mills, Plaintiff again told Read that he did not feel

7

comfortable being around Mills, felt his life was threatened, and that if Read did not relocate Mills, Plaintiff wanted to be moved instead. (*Id.*, ¶ 23; PSOF, ¶ 14.) Read did not respond to Plaintiff's relocation request and returned to the control room. (DSOF, ¶ 24; Pl. Dep., pg. 64:8-9.)

Following this conversation, Read did not relocate either Mills or Plaintiff. (DSOF, ¶ 29.) Read testified that he did not move either detainee because he did not believe Plaintiff or Mills had threatened each other, Mills had calmed down in Read's presence, and Read felt he had addressed any issues sufficiently to prevent further problems. (*Id.*)

After Read left the cellblock, Plaintiff testified that Mills continued to pace and would not sit still, "like his normal way," and appeared upset. (Pl. Dep. 65:5-11, 66:18-20.) Mills, however, made no threatening statements towards Plaintiff or any other inmate and did not make any physical gestures indicating he wished to fight Plaintiff or another inmate. (DSOF, ¶ 25.) Neither Plaintiff nor Mills made any other attempt to get Read's attention and Plaintiff did not speak with Read again regarding Mills' behavior for the remainder of Read's shift. (*Id.*, ¶ 26.)

The next day, January 7, 2019, Plaintiff woke up around 10:00 a.m. and read his Bible and prayed sitting on his bed in his cell. (DSOF, ¶ 32.) Around 11:00 a.m., Mills opened Plaintiff's cell door without warning, entered the cell, and pointed a television remote control at Plaintiff, miming that it was a gun. (*Id.*, ¶ 33.) Plaintiff stood up and told Mills to leave his cell. (*Id.*, ¶ 34.) Mills, however, began punching Plaintiff's face. (*Id.*, ¶ 35.) Plaintiff was able to push Mills out of his cell and pressed an intercom button to request assistance from jail personnel. (*Id.*, ¶ 36.) Officers arrived in the dayroom, but by that point the fight was over. (*Id.*, ¶ 39.) Plaintiff suffered a split lip that required stitches and a broken nose. (Pl. Dep., pg. 95:13-15; 98:1-7.) Defendant Read was not on duty on January 7, 2019, when the assault occurred. (DSOF, ¶ 40.)

8

At his deposition, Plaintiff testified that, before January 2019, he had been housed in the same cellblock with Mills once before for two to three months in 2018. (*Id.*, pg. 39:6-12.) Plaintiff also testified that he observed Mills frequently arguing with other detainees and witnessed Mills beat another inmate on one occasion. (*Id.*, 36:1-7, 20-24, 37:1-7, 41:12-15.) Plaintiff, however, testified that the January 2019 incident was the first time he had had any conflict with Mills and that he and Mills got along "okay" before January 6, 2019. (Pl. Dep., pgs. 38:20-24, 39:1, 44:19-24, 45:12; DSOF, ¶ 4.) Before the events at issue in this lawsuit, Mills had not made threatening statements towards Plaintiff or physically fought with Plaintiff, and Plaintiff had never complained about Mills to any correctional officer. (DSOF, ¶ 5; Pl. Dep., pgs. 38:12-19.)

As for Read, he had never observed any past incidents in which Mills was the aggressor and he was not personally aware of any propensity Mills might have had for aggression or fighting with other inmates or officers. (DSOF, ¶ 11.) Read was never required to take any precautions when interacting with Mills. (*Id.*, ¶ 12.)

Based on these events, Plaintiff filed this lawsuit on January 4, 2020, (Dkt. 1-1), and was permitted to proceed with his claim that Defendant Read failed to protect him from Mills' January 7, 2019 assault, with DeKalb County included as indemnitor. (Dkt. 10.)

### IV. Analysis

Defendants now move for summary judgment, arguing that judgment in their favor is warranted because the undisputed material facts demonstrate Read's decision not to relocate either Mills or Plaintiff was objectively reasonable under the circumstances. (Dkt. 80, pgs. 4-8.) In the alternative, Defendants argue they are entitled to qualified immunity. (*Id.*, pgs. 8-11.) Initially, the Court agrees with Defendants that Plaintiff has not introduced facts from which a reasonable jury

9

could find Read acted unreasonably. But the Court recognizes this is a close decision. So, the Court has addressed Defendants' alternative argument that Read is entitled to qualified immunity.

As a pretrial detainee, Plaintiff's claim that Defendant Read failed to protect him from Mills' attack arises under the substantive component of the Fourteenth Amendment's Due Process Clause. *See Fisher v. Lovejoy*, 414 F.3d 659, 661 (7th Cir. 2005). To prevail on a failure to protect claim, Plaintiff must show that: (1) "[t]he defendant made an intentional decision with respect to the conditions under which [he] was confined," (2) "[t]hose conditions put [him] at substantial risk of suffering serious harm," (3) the defendant's conduct was objectively unreasonable (*i.e.*, the defendant "did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious"), and (4) [b]y not taking such measures, the defendant caused the plaintiff's injuries." *Castro v. County of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016) (applying *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), to Fourteenth Amendment failure-to-protect claims brought by pretrial detainees); *see also Miranda v. County of Lake*, 900 F.3d 335, 350-51 (7th Cir. 2018) (citing *Castro v. County of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016)); *Hardeman v. Curran*, 933 F.3d 816, 823 (7th Cir. 2019) (extending *Kingsley*'s objective inquiry to all Fourteenth Amendment conditions-of-confinement claims brought by pretrial detainees); Seventh Circuit Civil Pattern Jury Instruction 7.16 (2017).

A constitutional violation, however, does not occur "every time an inmate gets attacked by another inmate." *Dale v. Poston,* 548 F.3d 563, 569 (7th Cir. 2008). Correctional facilities, "after all, are dangerous places often full of people who have demonstrated aggression." *Id.* Thus, "negligence" by correctional officials "is not enough." *Smith v. Sangamon Cty. Sheriff's Dep't*,

10

715 F.3d 188, 191 (7th Cir. 2014) (citations omitted); *see also Miranda*, 900 F.3d at 353–54 ("[I]t will not be enough to show negligence or gross negligence.") (citations omitted).

Whether an officer's actions were objectively reasonable "turns on the 'facts and circumstances of each particular case.'" *Kingsley*, 576 U.S. at 397. It is judged "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* Therefore, to hold Defendant Read liable for failing to protect Plaintiff against Mills' January 7, 2019 attack, Plaintiff must come forth with evidence that a reasonable officer in Read's shoes would have appreciated a high degree of risk to Plaintiff if Plaintiff and Mills remained together in the same cellblock. Jail officials are generally put on notice of a risk of harm when an inmate articulates a specific threat to his safety. *See Johnson v. Taylor*, No. 18 C 5263, 2020 WL 5891401, at *2 (N.D. Ill. Oct. 5, 2020) (Feinerman, J.) (citing *Gevas v. McLaughlin*, 798 F.3d 475, 480–82 (7th Cir. 2015) ("In failure to protect cases, [a] prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety.")).

Again, this case is a close call. Here, although it certainly appears Mills was agitated on January 6, 2019, Plaintiff has not introduced evidence sufficient to show that the information available to Defendant Read would have put a reasonable officer on notice that Mills posed a particular risk to Plaintiff's safety. At the time Read entered the dayroom, Mills had not threatened Plaintiff or any other inmate, nor were any of his actions directed at Plaintiff. Plaintiff's complaint that Mills was acting out, while obviously unsettling, did not communicate a heightened risk of serious harm to Plaintiff personally.

Understandably, Plaintiff points to Mills' statement that he would fight if Plaintiff wished

11

to fight him as evidence Read should have known an assault was imminent. But this statement is insufficient to show Read was aware of and unreasonably disregarded a *significant* risk to Plaintiff's safety. Although this statement certainly indicates Mills would not take a passive roll if threatened, the statement is simply too conditional to indicate Mills would attack Plaintiff unprovoked a day later. Although Plaintiff informed Read that he considered Mills' statement to be a threat against his life, at best, the statement suggests only that Mills would participate in a fight if Plaintiff initiated one. Particularly as Plaintiff made no complaints that Mills had ever threatened him, this indefinite statement is insufficient to show Read should have been aware of a "risk[] so great that [it is] almost certain to materialize if nothing is done." *Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005); *See also Gevas*, 798 F.3d at 480 ("Complaints that convey only a generalized, vague or stale concern about one's safety typically will not support an inference that the official had actual knowledge that the prisoner was in danger.")

More importantly, even if Mills' statement is construed as a direct, imminent threat towards Plaintiff, Plaintiff fails to introduce evidence indicating it was unreasonable for Read to think Mills' agitation had sufficiently diffused before he left the dayroom. When Plaintiff tapped on the glass and informed Read of Mills' behavior, Read promptly addressed Plaintiff's concerns by speaking with Mills. Following their conversation, Read believed the situation had deescalated such that Mills could contain his frustration and Read exited the dayroom. Although the parties disagree about exactly what Mills and Read said to each other, Plaintiff does not dispute Read's observation that Mills had calmed down during their interaction. Plaintiff testified that Mills resumed pacing and appeared unhappy after Read left the room, but he also noted this was typical behavior for Mills. And, as before, although Mills' pacing may have been disconcerting, Mills'

12

actions were not directed at Plaintiff or any other inmate. Between the time Read left the dayroom until Mills' assault the following day, Mills made no threatening statements or actions towards Plaintiff and, crucially, Plaintiff did not inform Read that he felt there was a continuing threat. Given that the situation appeared stable when Read left the dayroom and Read was not aware that Plaintiff continued to have concerns about Mills' behavior, it was not unreasonable for Read to believe the situation had been resolved such that the inmates did not need to be separated.

Thus, Plaintiff's argument against summary judgment boils down to a contention that Read should have separated him and Mills because Mills had previous conflicts with other inmates. Plaintiff, however, does not dispute that Read was unaware of any prior incidents involving Mills. Plaintiff points to several reports detailing incidents involving Mills, but none of these reports indicate that Read was present for these incidents or otherwise knew about them. Plaintiff also testified that he had never had any difficulty with Mills before January 6 and 7, 2019. Consequently, the fact that Mills had previously been in arguments and one fight with other inmates is insufficient to show that Read should have known Mills posed a significant risk to Plaintiff. *See Whaley v. Erickson*, 339 Fed. App'x 619, 622 (7th Cir. 2009).

Understandably, Plaintiff is upset he was attacked, and, with the clarity of hindsight, he undoubtedly wishes Read had separated him from Mills. However, whether Read acted reasonably must be judged from the information available to Read on January 6, 2019. Plaintiff has introduced insufficient evidence that a reasonable officer in Read's position should have been aware of a substantial risk to Plaintiff's safety, particularly once it appeared the situation had been resolved. Accordingly, summary judgment is warranted in favor of Defendant Read and DeKalb County as indemnitor.

However, because, as previously noted, this is a close case, the Court also addresses Read's qualified immunity argument. "Qualified immunity 'protects government officials from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Taylor v. City of Milford*, 10 F.4th 800, 806 (7th Cir. 2021) (quoting *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010)); *see also City of Escondido v. Emmons*, --- U.S. ---, 139 S. Ct. 500, 503 (2019) (per curiam) (same). Evaluating an assertion of qualified immunity requires a court to ask "whether the plaintiff's allegations make out a deprivation of a constitutional right, and whether the right was clearly established at the time of defendant's alleged misconduct." *Taylor*, 10 F.4th at 806. Qualified immunity is an affirmative defense, but once raised, it is a plaintiff's burden to overcome the defense. *Leiser v. Kloth*, 933 F.3d 696, 701 (7th Cir. 2019).

As explained above, the undisputed facts of this case demonstrate Plaintiff cannot show Read's actions deprived him of a constitutional right. Assuming, though, that Plaintiff could satisfy the first element of the qualified immunity analysis, he has not demonstrated that the law was clearly established such that an officer in Read's position would have understood his actions to violate Plaintiff's rights. The Supreme Court has cautioned courts "not to define clearly established law at a high level of generality." *City of Escondido* 139 S. Ct. at 503. Rather, "[t]he focus [of the qualified immunity assessment] is on whether the officer had fair notice that [his or her] conduct was unlawful." *Taylor*, 10 F.4th at 806 (citations and internal quotations omitted). To satisfy his burden on the second qualified immunity element, Plaintiff must "show either a reasonably analogous case that has both articulated the right at issue and applied it to factual circumstances similar to the one at hand or that the violation was so obvious that a reasonable person necessarily

14

would have recognized it as a violation of the law." *Leiser*, 933 F.3d at 701. "For the law to be clearly established, the 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Lopez v. Sheriff of Cook Cty.*, 993 F.3d 981, 987 (7th Cir. 2021) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

Thus, Plaintiff needed to point to case law establishing that failing to separate Plaintiff and Mills would have been unreasonable under the circumstances presented by this case. Plaintiff identifies no analogous case law. Plaintiff points to *Velez v. Johnson*, 395 F.3d 732 (7th Cir. 2005), and *Haley v. Gross*, 86 F.3d 630 (7th Cir. 1996), but neither of these cases remotely resemble the events at issue here. In *Velez*, the Seventh Circuit affirmed the denial of defendant's summary judgment motion where Velez was sexually assaulted after a jail officer did not check on him in person after Velez pushed an emergency call button and stated he was having a conflict with his cellmate. 395 F.3d at 736. In *Haley*, Haley complained repeatedly to several correctional officers that his cellmate was acting strangely and had threatened and intimidated him. 86 F.3d at 634-38. Officers also observed the two inmates screaming at each other and the cellmate specifically told officers he would "burn the place down" if he and Haley continued to share a cell. *Id.* at 637 n.18. The officers ignored both prisoners' requests to be separated and the cellmate then set a fire in his cell that resulted in his own death and Haley's disfigurement. *Id.* at 642. A jury concluded defendants were deliberately indifferent to the risk to Haley's safety, and the Seventh Circuit affirmed this verdict. *Id.* at 642-43.

The facts in this case, however, differ significantly from those in *Velez* and *Haley*. In particular, the undisputed facts in this case show Read did not ignore Plaintiff's complaints about Mills' behavior. Rather, Read testified that he did not separate the two detainees because he

15

witnessed Mills calm down after he intervened and Read, therefore, believed the situation to be resolved. After that point, no inmate informed Read of any continuing concerns regarding Mills.

At most, the cases Plaintiff identifies establish generally that jail officials have a duty to protect detainees from violence at the hands of other inmates and cannot ignore inmate's reports that they have been directly threatened by another prisoner. They do not, however, indicate that deciding not to separate Plaintiff and Mills under the circumstances in this case—where Read believed he had addressed Plaintiff's concerns—would violate a detainee's clearly established rights. The Court's independent review also did not uncover case law that would have put Read on notice that his actions here would violate Plaintiff's rights. Neither is Read's decision to attempt to calm Mills by speaking with him rather than relocating him to another cellblock so egregious as to put him beyond the protection of qualified immunity.

As Defendants note, qualified immunity protects a correctional official from liability for a "mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity gives "ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (internal quotation marks omitted). Defendant Read's assessment that Mills had calmed down on January 6, 2019, and did not pose a threat to the other inmates in the cell block, although ultimately mistaken, is the sort of judgment call qualified immunity is intended to protect from liability. Accordingly, Plaintiff has not carried his burden on either prong of the qualified immunity analysis and Defendants are entitled to qualified immunity.

## V. Conclusion

For the reasons stated above, the Court grants Defendants' motion for summary judgment [79], and dismisses Plaintiff's claims with prejudice. Final judgment shall enter.

If Plaintiff wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). If the appeal is found to be non-meritorious, Plaintiff could be assessed a "strike" under 28 U.S.C. § 1915(g). If a prisoner accumulates three "strikes" because three federal cases or appeals have been dismissed as frivolous or malicious, or for failure to state a claim, the prisoner may not file suit in federal court without pre-paying the filing fee unless he is in imminent danger of serious physical injury. *Id.* If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* in this Court. *See* Fed. R. App. P. 24(a)(1).

Plaintiff need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if Plaintiff wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). A Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended.

*See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

Date: October 14, 2021        By:        _____
                                          Iain D. Johnston
                                          United States District Judge